UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHIVA STEIN, | : |
| | : |
| Plaintiff, | : Civil Action No. 22-cv-4623 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| BLUEKNIGHT ENERGY PARTNERS, L.P., | : **SECURITIES EXCHANGE ACT OF** |
| DUKE R. LIGON, STEVEN M. | : **1934** |
| BRADSHAW, JOHN A. SHAPIRO, | : |
| WILLIAM W. LAMPTON, ROBERT H. | : **JURY TRIAL DEMANDED** |
| LAMPTON, JOEL D. PASTOREK, W.R. | : |
| "LEE" ADAMS, and EDWARD DREW | : |
| BROOKS, | : |
| | : |
| Defendants. | : |

---

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Blueknight Energy Partners, L.P. ("Blueknight or the "Partnership") and the members Blueknight's board of directors (the "Board" or the "Individual Defendants" and collectively with the Partnership, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Blueknight by affiliates of Ergon, Inc. ("Ergon").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on June 1, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Blueknight unitholders. The Proxy Statement recommends that Partnership unitholders vote in favor of a proposed transaction whereby the Merle, LLC ("Merger Sub"), a wholly-owned subsidiary of Ergon Asphalt & Emulsion, Inc. ("Parent"), will merge with and into Blueknight with Blueknight surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on April 21, 2022 (the "Merger Agreement"), each Blueknight unitholder will receive $4.65 in cash (the "Merger Consideration") for each Blueknight unit owned.

1. As discussed below, Defendants have asked Blueknight's unitholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Partnership's financial advisor Evercore Group L.L.C. ("Evercore") in support of its fairness opinion.

2. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Partnership's unitholders prior to the forthcoming vote so that they can properly exercise their corporate suffrage rights.

3. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Blueknight's unitholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Partnership trades on the NASDAQ Stock Exchange, headquartered in this District, and the Partnership's proxy solicitor, Innisfree M&A Incorporated, is also headquartered in this District.

## PARTIES

7. Plaintiff is, and has been at all relevant times, the owner of Blueknight units and has held such units since prior to the wrongs complained of herein.

8. Individual Defendant Duke R. Ligon has served as a member of the Board since October 2008 and is the Chairman of the Board.

9. Individual Defendant Steven M. Bradshaw has served as a member of the Board since November 2009.

10. Individual Defendant John A. Shapiro has served as a member of the Board since November 2009.

11. Individual Defendant William W. Lampton has served as a member of the Board since October 2016.

12. Individual Defendant Robert H. Lampton has served as a member of the Board since October 2016.

13. Individual Defendant Joel D. Pastorek has served as a member of the Board since August 2018.

14. Individual Defendant W.R. "Lee" Adams has served as a member of the Board since February 2018.

15. Individual Defendant Edward Drew Brooks has served as a member of the Board since October 2016.

16. Defendant Blueknight is a Delaware limited partnership and maintains its principal offices at 6060 American Plaza, Suite 600, Tulsa, Oklahoma. The Partnership's units trade on the NASDAQ Stock Exchange under the symbol "BKEP."

17. The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.    The Proposed Transaction**

19. Blueknight provides integrated terminalling services for companies engaged in the production, distribution, and handling of liquid asphalt in the United States. As of March 1, 2022, it had 54 terminals located in 26 states. Blueknight Energy Partners G.P., L.L.C. operates as a general partner of Blueknight Energy Partners, L.P. The Partnership was formerly known as SemGroup Energy Partners, L.P. and changed its name to Blueknight Energy Partners, L.P. in December 2009. Blueknight was incorporated in 2007 and is headquartered in Tulsa, Oklahoma.

20. On April 22, 2022, the Partnership announced the Proposed Transaction:

4

**TULSA, Okla., April 22, 2022 (GLOBE NEWSWIRE) -- **Blueknight Energy Partners, L.P. ("Blueknight" or the "Partnership") (Nasdaq: BKEP and BKEPP) today announced that it has entered into a definitive agreement and plan of merger ("Merger Agreement") pursuant to which an affiliate of Ergon, Inc. ("Ergon") would acquire all of the outstanding common and preferred units of the Partnership not already owned by Ergon and its affiliates (the "Public Common Units" and "Public Preferred Units"). The agreement follows the offer made by Ergon in October 2021 to acquire the Public Common Units and Public Preferred Units.

The agreement provides for an all-cash transaction, whereby:

- each holder of the Public Common Units would receive $4.65 per common unit owned, representing a 51.5% premium to the market closing price prior to Ergon's offer made on October 8, 2021 and a 40.5% premium to the trailing 30-day volume-weighted average price on April 21, 2022; and

- each holder of the Public Preferred Units would receive $8.75 per preferred unit owned, which is greater than the 52-week trading high for such units and represents a 5.3% premium to the market closing price prior to Ergon's offer made on October 8, 2021 and a 3.6% premium to the trailing 30-day volume-weighted average price on April 21, 2022.

The Board of Directors of Blueknight Energy Partners G.P., L.L.C., the general partner of Blueknight (the "GP Board"), delegated to a conflicts committee of the GP Board (the "BKEP Conflicts Committee"), consisting solely of the Partnership's three independent directors, the authority to review, evaluate and negotiate and approve the transaction on behalf of Blueknight and the holders of the Public Common Units. The BKEP Conflicts Committee, after evaluating the transaction with its independent legal and financial advisors, unanimously approved the transaction on behalf of the holders of the Public Common Units. Following the receipt of the recommendation of the BKEP Conflicts Committee, the GP Board approved the transaction.

The transaction is expected to close in mid-2022, subject to customary approvals. Ergon has committed to vote its units to approve the transaction.

**Advisors**

> The BKEP Conflicts Committee engaged Gibson, Dunn & Crutcher LLP and Evercore as its legal and financial advisors. Ergon engaged Baker Botts L.L.P. and Jefferies LLC as its legal and financial advisors.

* * *

21. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Blueknight's unitholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming unitholder vote.

**B.** **The Materially Incomplete and Misleading Proxy Statement**

22. On June 1, 2022, Blueknight filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Partnership's unitholders and solicits the unitholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Partnership's unitholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Partnership's unitholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

23. The Proxy Statement fails to provide material information concerning financial projections by Blueknight management and relied upon by Evercore in its analyses. The Proxy Statement discloses management-prepared financial projections for the Partnership which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Partnership prepared certain non-public financial forecasts (the

"Partnership Projections") and provided them to the Board and Evercore with forming a view about the stand-alone valuation of the Partnership. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Blueknight management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

24. For the Partnership Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, and Total Distributable Cash Flow, but fails to provide line items used to calculate the metrics and a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

25. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that unitholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

26. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated.

>Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

27. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

28. With respect to Evercore's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for Blueknight; (iii) the inputs and assumptions underlying the use of perpetuity growth rates of 0.5% to 2.50%; (iv) the inputs and assumptions underlying the use of the range of discount rates of 8.5% to 9.5%; (v) the inputs and assumptions underlying the EBITDA exit multiple multiples of 8.0x to 10.0x; and (vi) the Partnership's weighted average cost of capital.

29. With respect to Evercore's *Peer Group Trading Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each company selected for the analysis.

30. With respect to Evercore's *Precedent M&A Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics and multiples for each transactions selected for the analysis.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

31.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special unitholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

32.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with unitholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

34.     Defendants have issued the Proxy Statement with the intention of soliciting unitholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Partnership and relied upon by the Board in recommending the Partnership's unitholders vote in favor of the Proposed Transaction.

35. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to unitholders although they could have done so without extraordinary effort.

36. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

37. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### **COUNT II**

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

38. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39. The Individual Defendants acted as controlling persons of Blueknight within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Blueknight, and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Blueknight, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

40. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

41. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Blueknight, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

42. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the

Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

43. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

44. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

45. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

     D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

     E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 3, 2022

**MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*